UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-130-KSF

JEFFERSON DEVELOPMENT GROUP, INC.,
GEORGETOWN WYNDAMERE I, LLC,
and GEORGETOWN WYNDAMERE II, LLC                                  PLAINTIFFS

v.                                **OPINION & ORDER**

GEORGETOWN MUNICIPAL WATER &
SEWER SERVICE and
CITY OF GEORGETOWN, KENTUCKY                                       DEFENDANTS

* * * * * * * * * *

This matter is before the Court upon the motion of the defendants to dismiss the plaintiffs' complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Tax Injunction Act, 28 U.S.C. § 1341, bars this Court from exercising jurisdiction over the plaintiffs' complaint. [DE # 12]  Based on the Court's order of August 14, 2007 allowing the parties to conduct limited discovery on the issue of whether the Tax Injunction Act operates to bar this Court from exercising jurisdiction over the plaintiffs' complaint [DE # 20], the parties have filed supplemental briefs on this issue. [DE ## 24 and 25]  Accordingly, the defendants' motion to dismiss is now ripe for review.

I.      FACTUAL BACKGROUND

The plaintiffs, Jefferson Development Group, Inc., Georgetown Wyndamere I, LLC, and Georgetown Wyndamere II, LLC (collectively, the "plaintiffs"), filed this civil action for damages

and injunctive relief against the defendants, Georgetown Municipal Water & Sewer Service ("GMWSS") and the City of Georgetown, Kentucky (the "City"), on May 8, 2007. The plaintiffs' complaint challenges the policies and practice of the defendants in regard to the implementation and enforcement of fees charged by GMWSS known as "tap fees." Specifically, the plaintiffs allege that these "tap fees" violate the Fifth and Fourteenth Amendments of the United States Constitution, Kentucky statutes, and the Kentucky Constitution. The plaintiffs also assert a claim for breach of contract based upon an agreement entered into between the parties.

The relevant facts, as asserted by the plaintiffs, are as follows. During the fall of 1994 (and culminating in January 1995, when accepted and signed by the plaintiff Jefferson Development Group, Inc. ("Jefferson Development")), Jefferson Development negotiated and thereafter entered into a contract with GMWSS for the extension of water and sewer lines in Scott County, Kentucky. Pursuant to the terms and provisions of the contract, Jefferson Development undertook responsibility for and did in fact acquire all necessary easement rights to enable it to construct a water and sewer line. Then Jefferson Development constructed, at its cost and expense, a significant extension of water and sewer lines in Scott County, Kentucky - a benefit to both the plaintiffs and the defendants. The contract provided that the defendants would reimburse Jefferson Development for certain costs incurred in the construction of the sewer facilities.

Since Jefferson Development's entire purpose in entering into the contract was to extend water and sewer facilities to the plaintiffs' projects, the defendants agreed to charge the plaintiffs a "tap" fee of $400.00 per equivalent residential unit in regard to these construction projects for the years 1995 through the year 2010, the projected period of the construction project.

Although Jefferson Development obtained all the required easements and completed

construction of the sewer line extensions per the terms of the contract, the plaintiffs initially delayed the planned commercial development at the site in question at the request of the City, who requested development of multi-family units instead of commercial development. The plaintiffs complied with the City's request and were not concerned about the delay because the tap fees of $400.00 per equivalent residential unit were locked in through the year 2010 by the terms of the contract.

Plaintiffs now allege that the defendants increased the tap fee to $500.00 on March 1, 1999, then to $700.00 on February 1, 2000, and most recently to $1,500.00 on December 1, 2005. The plaintiffs contend that these increases in the tap fees amounts to a breach of contract. Additionally, the plaintiffs claim that the tap fees are actually a tax in violation of their constitutional rights and Kentucky statutes.

The defendants have filed their motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support of their motion to dismiss, the defendants argue that even if the tap fees constitutes a tax, which they do not concede, the Tax Injunction Act deprives this Court of jurisdiction over the plaintiffs' claims.

## II. DISCOVERY

In response to the Court's order allowing the parties time to conduct discovery on the issue of whether the Tax Injunction Act bars this Court from exercising subject matter jurisdiction over the plaintiffs' claims, the plaintiffs conducted the depositions of Mike Lane and Billy Jenkins. [DE ## 26-1, 26-2] Lane, a financial consultant employed by R.W. Beck, Inc. of Goodlettsville, Tennessee, serves as a financial and rate consultant for GMWSS. Lane testified that he advises GMWSS regarding water and sewer related matters, including rates, fees and other financial issues pertaining to operating the water and sewer utility in a fiscally prudent manner. He testified that the

tap fees imposed by GMWSS offset the cost of adding capacity to the water and sewer system in Georgetown. According to Lane, "the purpose [of the tap fee] is to make it fair so that new customers in high growth areas or where there's scarcity of water pay for expansion of services and existing customers aren't burdened with that cost for new capacity they aren't using." [DE # 26-2]

The plaintiffs also conducted the deposition of Billy Jenkins, the general manager of GMWSS. Jenkins explained that although GMWSS determines the appropriate tap fee, it must be approved by the Georgetown City Council and enacted by an ordinance. Jenkins further testified that GMWSS is a separate and distinct economic entity from the City of Georgetown, and that there is no exchange of funds between the two entities. [DE # 26-1]

## II. DISCUSSION

### A. THE TAX INJUNCTION ACT

The plaintiffs contend that GMWSS's tap fee constitutes an impermissible tax. While the defendants disagree that the tap fee is a tax, for purposes of their motion to dismiss only they accept the plaintiffs' characterization of this fee as a tax. The defendants argue that if the tap fee is indeed a tax, then the Tax Injunction Act, 28 U.S.C. § 1341, precludes this Court from exercising jurisdiction over this matter. The Tax Injunction Act provides that "[t]he district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purposes of the Act are "to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987). The Tax Injunction Act has been broadly interpreted to bar suits for declaratory relief, injunctive relief, and monetary relief when there is an

adequate remedy in state court. *See California v. Grace Brethren Church*, 457 U.S. 393, 408-10 (1982); *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586-88 (1995).

**B.     ANALYSIS**

In order for the Tax Injunction Act to apply in this case, the Court must first determine whether the tap fees at issue are in fact taxes. According to the Sixth Circuit, "the definition of the term 'tax' is a question of federal law, and the issue here is whether the assessment in question is a tax within the meaning of that term as employed by Congress in the Tax Injunction Act." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987).

Although not within the Tax Injunction Act context, the Supreme Court has discussed the distinction between a "fee" and a "tax." *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 336, 340-41 (1974). In determining whether the FCC had imposed a forbidden "tax" or a permitted "fee" upon a regulated entity, the Supreme Court explained:

> Taxation is a legislative function, and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property of income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.

*Id*. When evaluating an assessment under the Tax Injunction Act, the Sixth Circuit has adopted the approach set out by the First Circuit in *San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico*, 967 F.2d 683, 685 (1st Cir. 1992). There, the First Circuit defined a tax as follows:

> The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*Id*. When deciding whether a fee is a regulatory fee or a tax for purposes of the Tax Injunction Act, the Sixth Circuit follows a three-factor test, requiring consideration of the following factors: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation and benefit of the parties upon whom the assessment is imposed." *Hedgepeth v. Tennessee*, 215 F.3d 608, 612 (6thCir. 2000); *American Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Management Dist.*, 166 F.3d 835, 837 (6th Cir. 1999). The predominant factor is the revenue's ultimate use. *Hedgepeth*, 215 F.3d at 612.

In this case, the tap fees are assessed by GMWSS. GMWSS is a partnership or business association created by and wholly owned by the City. GMWSS, in consultation with consultant Lane, determines what it believes to be an appropriate tap or connection fee, then forwards a proposal to the Georgetown City Council for approval to charge that specific amount for new customers tapping into the water and sewer lines thereafter. If approved, then the Georgetown City Council enacts the appropriate ordinance. Thus, because the entity imposing the tap fees is the Georgetown City Council, this factor weighs in favor of finding that the tap fees are indeed taxes.

Turning to the next factor - the parties upon whom the assessment is imposed - the Court notes that only a limited number of citizens, including the plaintiffs and similarly situated owners of real property adjacent to new sewer installations who must ultimately tap into the municipal sewer

system, are being assessed this tap fee. The tap fees, however, are uniformly applied to each new customer based on a standardized system to calculate the impact of each new development and customer on the GMWSS water and sewer system so that new developments and customers carry the cost of expansion and the burdens associated therewith and not existing customers. As a result, this factor is inconclusive in determining whether the "tap fees" are a fee and not a tax.

When the first two factors conflict on the issue, then the third factor - whether revenue generated by the fee is expended for general public purposes or used for regulation and benefit of parties upon whom the assessment is imposed - is dispositive. *See Hedgepeth*, 215 F.3d at 612; *see also San Juan Cellular Tel. Co.*, 967 F.2d at 685; *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388 (7th Cir. 1992). According to the Sixth Circuit, "if the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, the predominant factor is the revenue's ultimate use. When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated companies is likely a fee." *American Landfill Inc.*, 166 F.3d at 838.

Applying the tests articulated above, the Court finds the tap fees in this case are a tax for purposes of the Tax Injunction Act. *See Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir. 1991)(holding that special assessments and charges for sewer systems were taxes); *Northwest Arkansas Home Builders Ass'n Inc. v. City of Rogers*, 2008 WL 615927 (March 3, 2008)(holding that access and hook-up fees for new installations of water and sewer services qualify as taxes); *Herron v. Mayor and City Council of Annapolis, Maryland*, 388 F.Supp.2d 565, 571 (D.Md. 2005)(holding impact fee ordinance imposed by county, which subjected all new homes to the charge and funded school construction, was a tax). First, the tap fees are assessed to support a publically

owned utility service that is essential in maintaining and expanding water and sewage treatment facilities and all its lines, pumps, and component parts and systems in the City. Clearly, the construction, operation and maintenance of the City's water and sewer service is a benefit to the general public. Additionally, the tap fees are not imposed to regulate or punish the landowners assessed. They do not bestow a special, individual benefit upon those assessed beyond that bestowed upon the general public and they are not assessed in response to a request to engage in any regulated activity. Therefore, the Court finds that the tap fees at issue in this case are a "tax" for purposes of the Tax Injunction Act.

Because the tap fees are a "tax" under federal law, the Tax Injunction Act and principles of comity bar the plaintiffs' claims if there exists a state remedy that is, in the words of the Tax Injunction Act, "plain, adequate, and complete," or, as the cases developing the common-law principle of comity have required, "plain, speedy, and efficient." *See Fair Assessment in Real Estate, Ass'n v. McNary*, 454 U.S. 100, 116 n.8 (1981). The plaintiffs have not alleged nor argued that there is not an adequate remedy under state law. Accordingly, the defendants' motion to dismiss will be granted.

**IV.   CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS**:

(1)   that the defendants' motion to dismiss [DE # 12] is **GRANTED**;

(2)   the plaintiffs' complaint is **DISMISSED**;

(3)   this is a final and appealable order; and

(4)   this action is **STRICKEN** from the active docket.

This March 10, 2008.



Signed By:

*Karl S. Forester*   KSF

United States Senior Judge

9